# In the United States Court of Federal Claims

No. 20-2038C
Filed: November 15, 2021
FOR PUBLICATION

**INDIANA MUNICIPAL POWER AGENCY, et al.,**

***Plaintiffs,***

**v.**

**UNITED STATES,**

***Defendant.***

*Peggy A. Whipple*, Healy Law Offices, LLC, Springfield, MO, for the plaintiffs.

*Rebecca S. Kruser*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant.

**MEMORANDUM OPINION AND ORDER**

***HERTLING*, Judge**

The plaintiffs have filed a timely motion under both Rule 59(a) and Rule 60(b)(1) of the Rules of the Court of Federal Claims ("RCFC") for reconsideration of the Court's judgment entered on July 23, 2021. (ECF 27.) The plaintiffs argue that the Court committed "clear legal error" resulting in "manifest injustice." (ECF 27 at 3.)

The Court finds that once again the plaintiffs have misapprehended federal law and failed to recognize that the Court already implicitly rejected the argument they advance in support of their motion. *See Ind. Mun. Power Agency v. United States*, 154 Fed. Cl. 752, 762 (2021). The plaintiffs' motion is denied.

## I. BACKGROUND

The plaintiffs are public-sector power providers. They all issued Direct Payment Build America Bonds ("BABs"), authorized by section 1531 of the American Recovery and Reinvestment Act of 2009 ("ARRA"), Pub. L. No. 111-5, 123 Stat. 115 (2009). Under the ARRA, issuers of Direct Payment BABs are entitled to a tax refund from the Internal Revenue Service ("IRS") of 35 percent of the interest payable under the BABs. The plaintiffs alleged that the defendant, the United States, acting through the Treasury Department and the IRS, stopped making payments to the plaintiffs based on the ARRA's 35-percent rate in 2013. The plaintiffs

alleged that, since 2013, the defendant had been violating its statutory obligation to pay 35 percent of the interest payable under their Direct Payment BABs.[1]

The defendant moved to dismiss the complaint under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. The focus of the defendant's argument was that the Budget Control Act and the Taxpayer Relief Act implemented sequestration of direct spending, defined as "budget authority provided by law *other than appropriation Acts*." 2 U.S.C. § 900(c)(8) (emphasis added); *see also id.* § 906(k)(1). The defendant argued that the tax refunds for the plaintiffs' Direct Payment BABs were subject to that sequestration. A central issue regarding the motion to dismiss was whether 31 U.S.C. § 1324, the provision appropriating funds for the payment of tax refunds for Direct Payment BABs, was direct spending or spending pursuant to an "appropriation Act." *Ind. Mun. Power Agency*, 154 Fed. Cl. at 759-63. If the funds for the payment of tax refunds to the plaintiffs for their Direct Spending BABs were spent pursuant to an "appropriation Act" they would not be subject to sequestration, and the plaintiffs could state a claim.

The Court held that the tax refunds owed under the ARRA for Direct Payment BABs constituted "direct spending" and were, accordingly, subject to sequestration. *Id.* at 763. The defendant's motion to dismiss was granted. *Id.* at 769.

After entry of judgment, the plaintiffs filed a timely motion under RCFC 59(a), seeking reconsideration of the Court's ruling. (ECF 27.) The plaintiffs argue that the Court's ruling was legally incorrect and has caused "undisputable manifest injustice." (*Id.* at 7.) The plaintiffs posit that, regardless of whether 31 U.S.C. § 1324 is an "appropriation Act," the ARRA itself was an "appropriation Act," and, therefore, the tax refunds due for Direct Payment BABs constitute spending under an "appropriation Act." (*Id.*) The matter has been fully briefed, and the Court has determined that oral argument on the plaintiffs' motion is not necessary.

## II. STANDARD OF REVIEW

RCFC 59(a)(1) establishes the standard for a motion for reconsideration:

> The Court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues—and to any party—as follows:
>
> (A) for any reason for which a new trial has heretofore been granted in an action at law in federal court;

---

[1] The plaintiffs also alleged that section 1531 of the ARRA created a contractual agreement with the defendant and that the defendant's failure to pay at the 35-percent rate breached that contract. The Court rejected that claim and granted the defendant's motion under RCFC 12(b)(6) to dismiss it. In their motion under RCFC 59 and 60, the plaintiffs do not challenge this aspect of the Court's prior ruling, and, as a result, this opinion does not address that aspect of the plaintiffs' initial claims.

(B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or

(C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC 59(a)(1).[2]

"Under [RCFC] 59(a)(1), a court, in its discretion, may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (internal quotation and citation omitted).

"Reconsideration of a judgment is not intended to permit a party to [reargue] its case when it previously was afforded a full and fair opportunity to do so." *Peretz v. United States*, 151 Fed. Cl. 465, 468 (2020), *appeal pending*, No. 21-1831 (Fed. Cir.). Rule 59 does not provide an opportunity to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation and citation omitted); *see also Peretz*, 151 Fed. Cl. at 468; *Ammex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002); *Principal Mut. Life Ins. Co. v. United States*, 29 Fed. Cl. 157, 164 (1993).

Given its limited purpose, a "[m]otion[ ] for reconsideration must be supported by a showing of extraordinary circumstances which justify relief." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (internal quotation and citation omitted). In the case of a party seeking reconsideration on the ground of manifest injustice, that party must demonstrate that such injustice is "apparent to the point of being almost indisputable." *Pac. Gas & Elec. Co. v. United States*, 74 Fed. Cl. 779, 785 (2006), *aff'd in part and rev'd on other grounds,* 536 F.3d

---

[2] The plaintiffs also purport to file their motion under RCFC 60(b)(1). (ECF 27 at 6.) RCFC 59 and RCFC 60 are similar in purpose, both allowing a party to seek reconsideration of a court's decision. Under RCFC 59, a motion for reconsideration must be brought within 28 days of the decision for which reconsideration is sought. RCFC 59(b). Under RCFC 60(b), the window for seeking reconsideration is longer.

The standards under which a court evaluates a motion under either RCFC 59 or RCFC 60 are similar, and courts in some instances consider both rules in analyzing a litigant's claim. *See, e.g.*, *Cyios Corp. v. United States*, 124 Fed. Cl. 107, 114 (2015) (considering a motion brought pursuant to both RCFC 59 and 60 under both rules); *Webster v. United States*, 93 Fed. Cl, 676, 680 (2010) (same). While the shorter deadline of RCFC 59 at times constrains a court to consider a motion only under RCFC 60, the filing in this case of a timely motion under RCFC 59 presents no such limitation. *See Bowling v. United States*, 93 Fed. Cl. 551, 561 n.1 (2010) (noting that because the plaintiff's motion was "timely filed under RCFC 59" the court would address the motion under RCFC 59 rather than RCFC 60). Accordingly, as in *Devine v. United States*, No. 18-871, 2021 WL 3362229, at *5 n.2 (Fed. Cl. Aug. 3, 2021), the Court will treat the motion as one under RCFC 59 and merge the RCFC 60(b)(1) motion into the RCFC 59 motion.

1282 (Fed. Cir. 2008); *accord Biloxi Marsh Lands Corp. v. United States*, No. 12-382, 2021 WL 4979879, at *4 (Fed. Cl. Oct. 27, 2021).

## III. DISCUSSION

As the plaintiffs note, the briefs and oral arguments made during consideration of the defendant's motion to dismiss focused primarily on whether 31 U.S.C. § 1324 was an "appropriation Act." This issue was most salient because 31 U.S.C. § 1324 provides the permanent appropriation of funds for tax refunds, including tax refunds for Direct Payment BABs. Accordingly, if § 1324 were an "appropriation Act," payments made under its authority would have been exempted from sequestration. If § 1324 were not an "appropriation Act," as the Court found, refunds for the bonds at issue would be subject to sequestration. Given the central importance of the issue to the resolution of the motion, much of the parties' arguments and the Court's earlier decision focused on § 1324.

The plaintiffs now argue that the defendant's focus on § 1324 caused the Court (and the plaintiffs themselves) to overlook a more important issue: whether the ARRA itself was an "appropriation Act" whose provisions would be exempt from sequestration. The plaintiffs posit that the ARRA, which both established the Direct Payment BABs program and amended 31 U.S.C. § 1324 to enable refund payments to issuers of the BABs, is an "appropriation Act." (ECF 27 at 7.) The plaintiffs argue that, "as the [defendant] has conceded and th[e] Court has found, programs funded through an appropriation act are not direct spending and are thus exempt from sequestration." (*Id.*) Completing the syllogism, the plaintiffs contend that the "Court's holding that the [defendant's] BABs payment obligations are direct spending subject to sequestration is . . . obvious legal error and/or mistake which has worked undisputable manifest injustice . . . ." (*Id.*) The plaintiffs did not raise this argument during briefing or oral argument on the defendant's motion to dismiss; that was when the argument would have been timely.

Although the plaintiffs' argument is untimely, the Court will consider it. The issue now before the Court is the same as it was when the defendant's motion to dismiss was considered: whether the tax refunds owed to issuers of Direct Payment BABs are direct spending subject to sequestration. The answer to that question again depends on whether the budget authority for payments to issuers of Direct Payment BABs is "direct spending" or whether that budget authority is provided by an "appropriation Act."

### A. Budget Authority

The plaintiffs ignore the fact that the ARRA did not appropriate money for the Direct Payment BABs program. Instead, the ARRA amended 31 U.S.C. § 1324 to provide funding for tax refunds due to issuers under the Direct Payment BABs program. ARRA, Pub. L. No. 111-5, 123 Stat. 115, 360. Section 1324 of Title 31 provides for "[n]ecessary amounts" to be appropriated "for refunding internal revenue collections as provided by law." 31 U.S.C. § 1324(a). As the plaintiffs concede, the refunds to issuers of Direct Payment BABs come from the permanent appropriation of 31 U.S.C. § 1324. (ECF 31 at 3 n.5.)

Because the budget authority for the tax refunds is provided in 31 U.S.C. § 1324, the Court correctly focused its analysis in its Memorandum Opinion on that provision. *See Ind.*

*Mun. Power Agency*, 154 Fed. Cl. at 759-63. The Court found that § 1324 is not an "appropriation Act" but, instead, authorizes direct spending. *Id.* at 763. Without an explicit exemption by Congress, that direct spending is subject to sequestration.[3] *Id.* In their motion for reconsideration, the plaintiffs do not take issue with that holding. Because that issue is dispositive of the plaintiffs' claim, the plaintiffs have no argument that the prior ruling was in error.

**B. Structure of the ARRA**

Instead of challenging the Court's holding with respect to 31 U.S.C. § 1324, the plaintiffs now argue that the relevant inquiry should have focused on the ARRA itself. Even if this argument were determinative, and it is not, the plaintiffs' motion fails. In pursuing their argument that the ARRA itself is an "appropriation Act," the plaintiffs fail to consider the structure of the ARRA.

The plaintiffs premise their argument on 1 U.S.C. § 105. Because a related provision in Title 2 of the U.S. Code defines "appropriation Act" by cross-referencing 1 U.S.C. § 105, the Court had considered the provision in determining that 31 U.S.C. § 1324 was not an "appropriation Act." *Ind. Mun. Power Agency*, 154 Fed. Cl. at 760. Section 105 provides: "The style and title of all Acts making appropriations for the support of Government shall be as follows: 'An Act making appropriations (here insert the object) for the year ending September 30 (here insert the calendar year).'" 1 U.S.C. § 105. As the plaintiffs note, the title of H.R. 1, the legislation that became the ARRA upon enactment, was "[a]n Act Making supplemental appropriations for job preservation and creation, infrastructure investment, energy efficiency and science, assistance to the unemployed, and State and local fiscal stabilization, for the fiscal year ending September 30, 2009, and for other purposes." ARRA, Pub. L. No. 111-5, 123 Stat. 115.

The plaintiffs argue that "the title of the ARRA conforms with the requirements of 1 U.S.C. §105, thus the ARRA which created the BABs program is an appropriation act." (ECF 27 at 7.)

The plaintiffs correctly note that the title of the ARRA conforms with 1 U.S.C. § 105 and that the ARRA contains, as one portion of that legislation, an "appropriation Act." They err, however, in concluding that the budget authority for the Direct Payment BABs established by § 1531 of the ARRA arises pursuant to an "appropriation Act." The ARRA contains both provisions making appropriations and provisions authorizing direct spending. An example of the latter is the ARRA's provision providing payments to issuers of Direct Payment BABs to be funded through 31 U.S.C. § 1324.

On its own terms, the ARRA does not support the plaintiffs' argument, which rests solely on the style and title of the legislation enacted. While the Court did rely in part on 1 U.S.C. § 105 in helping to determine whether a bill enacts an "appropriation Act," that style and title are

[3] Congress exempted from sequestration refundable tax credits paid to individuals. 2 U.S.C. § 905(d). Congress did not provide an exemption for refundable tax credits paid to entities, such as the plaintiffs.

not sufficient to resolve the issue. Rather, the answer must be derived by reviewing not simply the style and title of the legislation, but also its structure. The plaintiffs would promote form over function; although form is important, it was not dispositive in the earlier ruling and is not dispositive here. The Court rejects the plaintiffs' argument.

The ARRA is a "lengthy and complex act amounting to just over 400 pages" enacted to address the 2008 to 2009 recession. Cong. Rsch. Serv. ("CRS"), R40537, *American Recovery and Reinvestment Act of 2009 (P.L. 111-5): Summary and Legislative History* ii (2009) ("CRS Report").[4] The ARRA contains "two major divisions": Division A – Appropriations Provisions and Division B – Tax, Unemployment, Health, State Fiscal Relief, and Other Provisions. CRS Report at ii; *see also* ARRA, Pub. L. No. 111-5, 123 Stat. 115. Title I of Division B has its own short title, "American Recovery and Reinvestment Tax Act of 2009." ARRA, Pub. L. No. 111-5, § 1000(a), 123 Stat. 115. The Titles and Sections are not consecutively numbered between Division A and Division B, and some of the same section numbers are used in both divisions. For example, there are two sections 1521, two sections 1522, and two sections 1541.

Section 1531, which established the Direct Payment BABs program and amended 31 U.S.C. § 1324 to fund the program as a tax refund, is under Division B's Title I, which, as noted, is itself separately designated as the American Recovery and Reinvestment Tax Act of 2009.

The Court's finding that the tax refunds for Direct Payment BABs are direct spending is consistent with the way legislative entities interpreted the ARRA. In reviewing the ARRA, the Congressional Budget Office ("CBO") determined that the provisions of the ARRA under Division A constituted "appropriations," and that the provisions under Division B were "direct spending." *See* Letter of Douglas W. Elmendorf, Director, CBO to the Hon. Nancy Pelosi (Feb. 13, 2009).[5] Similarly, the CRS noted that "Division A includes the discretionary spending [*i.e.*,

---

[4] Courts may take judicial notice of certain government documents, such as CRS Reports, because they "are capable of being 'accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Mobility Workx, LLC v. Unified Pats., LLC*, 15 F.4th 1146, 1151-52 (Fed. Cir. 2021) (quoting Fed. R. Evid. 201(b)(2)) (granting a party's motion for judicial notice of various government documents). The Court does not rely on these legislative documents as dispositive to the legal issue; instead, the Court notes that its determination is consistent with the description of the ARRA and its provisions in those documents. The CRS Report is publicly available at https://crsreports.congress.gov/product/pdf/R/R40537.

[5] Congress created the CBO in 1974. Congressional Budget and Impoundment Control Act of 1974, Pub. L. No. 93-344, 88 Stat. 297 (1974). The primary duty and function of the CBO is "to provide to the Committees on the Budget of both Houses information which will assist such committees in the discharge of all matters within their jurisdictions, including . . . information with respect to the budget, appropriation bills, and other bills authorizing or providing new budget authority or tax expenditures . . . ." 2 U.S.C. § 602(a). The letter is publicly available at

appropriation] provisions, but some significant substantive provisions as well; Division B includes the mandatory spending [*i.e.*, direct spending] and revenue provisions, with some exceptions."[6] CRS Report at ii. Multiple congressional committees, not only the committees with jurisdiction over appropriations, reviewed the ARRA. *Id.*; *see also* 155 Cong. Rec. H525-02 (2009).

The ARRA did not provide the budget authority for the Direct Payment BABs program through discretionary spending in Division A's "Appropriation Provisions." ARRA, Pub. L. No. 111-5, 123 Stat. 115. Instead, in Division B, the ARRA designated the budget authority to be the permanent appropriation under 31 U.S.C. § 1324. *Id.* at 360.

## IV. CONCLUSION

Although the ARRA established the Direct Payment BABs program, it provided that the program was funded through 31 U.S.C. § 1324. The Court has found § 1324 to be subject to sequestration as direct spending, and in their motion the plaintiffs do not contest that holding. Consistent with the Court's conclusion, the defendant's payment obligations under the ARRA arose under Division B, which on its face constitutes direct spending. Multiple legislative entities have similarly identified the provisions of Division B of the ARRA, including the provision creating the Direct Payment BABs program, as direct spending. The Court did not err in dismissing the plaintiffs' claims, and the plaintiffs have failed to demonstrate that "extraordinary circumstances" justify relief in this case and that injustice is "apparent to the point of being almost indisputable." *See Caldwell*, 391 F.3d at 1235; *Pac. Gas & Elec. Co.*, 74 Fed. Cl. at 785.

Accordingly, the plaintiffs' motion for reconsideration (ECF 27) is **DENIED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

https://www.cbo.gov/sites/default/files/111-th-congress-2009-2010/costestimate/hr1conference0.pdf.

[6] Congress established the nonpartisan CRS, among other functions, to aid congressional committees in the analysis of legislative proposals and to prepare and provide reference materials to members and committees of Congress. 2 U.S.C. § 166(d).